Filed 07/13/26

VERMONT SUPERIOR COURT

Grand Isle Unit
PO Box 7
North Hero VT  05474
802-372-8350
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 24-CV-04268

| | |
|---|---|
| Shyla and Andrew Stewart, Plaintiffs/Counterclaim Defendants  v.  Vermont Construction Company, Defendant/Counterclaim Plaintiff | DECISION ON MOTIONS |

### RULING ON CROSS MOTION FOR SUMMARY JUDGMENT

This action involves a dispute over work performed at the home of Plaintiffs Shyla and Andrew Stewart (the "Stewarts") by Defendant Vermont Construction Company ("VCC") pursuant to a construction contract (the "Contract").  Plaintiffs represent themselves and Defendant is represented by Attorney Celeste E. Laramie, Esq.  The parties have filed cross-motions for summary judgment pursuant to Rule 56 of the Vermont Rules of Civil Procedure. The Stewarts allege the Contract required VCC to submit reports for all project-related expenses. Since VCC has not provided these reports, the Stewarts argue they are entitled to damages for payments made to VCC that VCC cannot justify.  VCC asserts that it has fulfilled its contractual obligations and that Plaintiffs have wrongfully failed to make full payment.  For the reasons discussed below, Plaintiffs' motion is DENIED and Defendant's motion is GRANTED.[1]

### Background

On October 24, 2024, the Stewarts filed this lawsuit alleging what was eventually determined to be a single breach of contract claim against VCC for failing to provide documentation they claimed was required to justify material and labor expenses incurred in repairing the Stewarts' home.  On January 31, 2025, VCC filed a motion to dismiss the lawsuit, interpreting the Stewarts' Complaint as containing four claims: (1) a claim under the Vermont Arbitration Act, (2) the Vermont Residential Contractor Statute, (3) a claim under Vermont's Criminal Code, and (4) a claim under Vermont's Consumer Protection Act.  In their response, the Stewarts clarified that they were bringing this action only for breach of contract.  In its decision, the Court found the Stewarts had alleged enough to survive a Rule 12(b)(6) motion on their breach of contract claim alleging VCC failed to comply with required disclosures under the contract, and such lack of disclosures resulted in VCC overcharging the Stewarts.

---

[1] Defendant has also filed a motion for leave to file a surreply, which is GRANTED, in light of the new assertions and arguments made by Plaintiffs in their reply memorandum filed in support of their summary judgment motion.

VCC then answered the Stewarts' Complaint and filed a counterclaim, also alleging breach of contract, stating that VCC had fulfilled its obligations and that the Stewarts had refused to pay for the work agreed upon and performed.

On July 21, 2025, the Stewarts filed a motion for summary judgment. On September 19, 2025, the Court issued an order denying the motion. The Court noted that the Stewarts filed the motion "less than three months" after the discovery schedule was approved and that the motion relied solely on their own affidavits. At the time, VCC had no opportunity to depose either Plaintiff. Therefore, the Court determined the factual record was "not developed enough" and that there had not been adequate time for discovery. The Court also indicated a separate reason for denial, which was the Stewarts' failure to follow Rule 56, specifically, their failure to include citations to the record for facts that were claimed to be undisputed. Discovery proceeded in the case, and the instant motions followed.

Undisputed Facts

The following relevant facts are undisputed.[2] The Stewarts and VCC entered into a written contract on September 21, 2023.[3] *See* Def. SUMF ¶ 1; Def. Ex., A at 4 (filed 4/23/2026). VCC is a registered contractor under 9 V.S.A. § 4001(1), and Stewarts are "owner[s]" under 9 V.S.A. § 4001(3). The Contract relates to work to be performed on the Stewarts' home located at 10 Ladd Point, Grand Isle, Vermont. Def. SUMF ¶ 1. Specifically, VCC was retained to repair water damage and rot in the roof and interior. *Id*. ¶ 10.

The Contract contains five sections describing the work and a terms and conditions section outlining general terms. *Id*. ¶ 2. The five sections involving work include rot repair, demolition, rough carpentry, roofing, and drywall and paint. *Id*. Each section includes a bolded title with the section name and a description of services below the name. Def. Ex. A, at 1-2. Every section, except "rot repair," only states the name of the section in the title. *Id*. "Rot repair," on the other hand, includes the clause next to the title in bold stating "Time and Material Rate in Addition to Proposed Fixed Rate ($119,507) Below." *Id*.; Def. SUMF ¶ 3. The following services are described under rot repair:

---

[2] In support of their motions, each party has filed a Statement of Undisputed Material Facts ("SUMF"). However, as discussed further below, the Stewarts failed to support many of their facts by providing citations to admissible evidence in the record, as required by Rule 56(c)(1). Additionally, the Stewarts failed to respond to VCC's SUMF as well as its additional SUMF. Accordingly, except as otherwise noted, the Court considers the facts included in the VCC's SUMF to be undisputed, and the unsupported facts in the Stewarts' SUMF are disregarded. *See* V.R.C.P. 56(e); *Boyd v. State*, 2022 VT 12, ¶ 8 n.1, 216 Vt. 272 (where plaintiff "did not directly respond to defendant's statement of facts[,] . . . . for purposes of summary judgment, defendant's facts are deemed undisputed").

[3] Only Shyla Stewart signed the Contract on behalf of the Stewarts; Andrew Stewart's signature does not appear. However, no party has raised any issue regarding standing.

> $15,000 allowance to repair rotten wood in the lakeside wall and ceiling. This work will be tracked and billed at a time ($85 per hour) and material (20% markup) allowance.
>
> $600 allowance for surgical demolition and rot repair on kitchen wall. Demolition conducted from living room side wall. Also tracked and billed time and material.
>
> $5,000 allowance to patch and repair siding upper and lower levels as needed. Cleanly cut back upper siding and install drip cap.

Def. Ex. A, at 1. No other section for work includes the phrase "time and material." *Id*. at 1-2. Additionally, "Rough carpentry" is the only other section in the description of services that has an "allowance" stating a "$11,400 material allowance" to "install new cable View Rail Signature series." *Id*. at 2.

The terms and conditions include several sections, including general conditions, site conditions, pricing and payment, project meetings/coordination, changes in the work, transparency, warranty/guarantees, and additional terms. *Id*. at 2-4. The relevant sections include "pricing and payment" and "transparency." "Pricing and payment" states the following:

> <u>Pricing & Payment:</u>
>
> - Any time and material work directly related to the project performed by Vermont Construction Employees will be billed at:
>   - $85.00 per man hour for carpenters and project management
>   - Specialty trades may be performed at different rates. Owner will be notified of different rates.
>   - The materials, consumables, subcontractors, and ancillary services purchased or retained by Vermon Construction which are directly related to the project will be marked up 30% or at the above rates.
>   - Requests for work made by the owner outside the scope of the contract made to workers on site without authorization by Vermont Construction project manager will be billed at 1.5x normal rates.
>
> - All invoices for work completed or stored material will be paid within 15 days of receipt, or as otherwise agreed.
>   . . .
> - Unpaid accounts will be billed 1.5% per month on outstanding balances.

The Transparency section states:

> <u>Transparency</u>
>
> - Receipts for time and material work to be compiled for project expenses and will be available to the owner for review at their discretion.

- Labor journals for time and material work to be updated regularly and will be available to the owner for review at their discretion.

*Id.* at 3-4.

During the course of the work, the parties modified the contract on four occasions. The first change order was to install an additional door for $5,200. Def. Answer and Counterclaim ¶ 21 (filed 4/28/2025); Pls. Answer to Def. Counterclaim ¶ 21 (filed 5/2/2025). The second change order addressed an overage of $14,958.62 regarding rot repair, raising the total cost to $35,558.62. *Id.* ¶¶ 12, 15. The third and fourth change orders removed the deck and railing from the scope of the work, resulting in a net reduction of $37,872.61. *Id.* ¶ 23. The Stewarts assented to all these changes. *Id.* ¶¶ 13, 22, 24.[4]

Of the work within the scope after the change orders, the Stewarts agree that VCC substantially completed each contracted task to the best of their knowledge. Specifically, the Stewarts report that there have been no leaks in their roof since VCC completed the work. The only task the Stewarts assert VCC did not complete is reinstalling the PVC kickboard and painting it to match under the "Roofing" section. *See* Def. Ex. C, at 7 (filed 04/23/2026).

In total, VCC has invoiced the Stewarts $101,793.61, plus late fees. Def. SUMF ¶ 26. VCC produced documentation for $35,558.62 of that total, the portion representing rot repair.[5] Def. Answer and Counterclaim ¶ 15; Pls. Answer to Def. Counterclaim ¶ 15. The Stewarts have paid VCC $70,460.02, beginning with an $11,000 deposit. *Id.* at ¶ 19. VCC sent the final invoice on May 10, 2024, for $31,333.59, which the Stewarts have not paid. *Id.* at ¶ 21.

Discussion

Plaintiffs and Defendant have moved for summary judgment on their breach of contract claims against each other. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). "The nonmoving party may survive the motion if it responds with specific facts raising a triable issue," and courts "give the nonmoving party the benefit of all reasonable doubts and inferences." *Caldwell v. Champlain Coll. Inc.*, 2025 VT 17, ¶ 7, 336 A.3d 423 (quotations omitted). When "there are cross-motions for summary judgment, both parties are entitled to the benefit of all reasonable doubts and inferences when being considered as the nonmoving party." *Vt. Coll. of Fine Arts v. City of Montpelier*, 2017 VT 12, ¶ 7, 204 Vt. 215 (quotations omitted).

---

[4] These facts are found in the Stewarts' answer to VCC's counterclaim, where they admitted VCC's allegations. *See Barber v. Chase*, 101 Vt. 343, 349, 143 A. 302, 304 (1928) ("The admission, by the answer, of a fact alleged in the complaint, is a judicial admission, and binding and conclusive.").

[5] VCC acknowledged that it could not locate timesheets or notes covering seven hours of billed labor. Pls. Ex. 3H (filed 5/8/2026). However, VCC also under-billed materials, and once those amounts offset the missing labor entries, VCC under-billed the Stewarts by $623.95 overall. The parties do not dispute the reflected total.

As an initial matter, the Court observes that the Stewarts' filings regarding the cross motions are procedurally deficient. "A moving party asserting that a fact cannot genuinely be disputed must support the assertion by filing a separate and concise statement of undisputed material facts consisting of numbered paragraphs *with specific citations to particular parts of materials in the record*." V.R.C.P. 56(c)(1) (emphasis added). Similarly, "[a] nonmoving party responding to a statement of undisputed material facts and asserting that a fact is genuinely disputed[ or] that the materials cited do not establish the absence of a genuine dispute, . . . *must file a paragraph-by-paragraph response*, with specific citations to particular parts of materials in the record that the responding party asserts demonstrate a dispute." V.R.C.P. 56(c)(2) (emphasis added).

The Stewarts' filings fall short of both rules. First, many paragraphs in the Stewarts' SUMF do not include "specific citations" to "the record." V.R.C.P. 56(c)(1). Second, the Stewarts have not submitted any filings responding to VCC's own SUMF or Additional SUMF. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion," among other options. V.R.C.P. 56(e)(2); *see, e.g.*, *Clayton v. Unsworth*, 2010 VT 84, ¶¶ 28-30, 188 Vt. 432; *Gallipo v. City of Rutland*, 2005 VT 83, ¶¶ 26-34, 178 Vt. 244; *Boulton v. CLD Consulting Eng'rs, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413. The Court acknowledges the Stewarts are self-represented, and while "pro se litigants receive some leeway from the courts, they are still bound by the ordinary rules of civil procedure." *Zorn v. Smith*, 2011 VT 10, ¶ 22, 189 VT. 219 (quotations omitted). Here, the Stewarts are on notice of these procedures, given that the Court highlighted similar deficiencies in its prior denial of their first motion for summary judgment. *See* Decision on MSJ at 2 (issued 09/19/25). As such, the Court does not consider the Stewarts' facts that are unsupported, and considers VCC's facts undisputed.

I.    Construction Contract Interpretation.

"The cardinal rule in construing contracts is the intent of the parties." *Beldock v. VWSD, LLC*, 2023 VT 35, ¶ 27, 218 Vt. 144 (quotations omitted). "To determine the meaning of a specific provision of a contract, we consider the whole instrument and construe it in harmony if possible." *Id.* (quotation omitted). "When the language of the contract is clear on its face, we will assume that the intent of the parties is embedded in its terms." *Dep't of Corr. v. Matrix Health Sys., P.C.*, 2008 VT 32, ¶ 12, 183 Vt. 348 (quotation omitted). However, an ambiguity exists when "a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable." *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 579 (1988). As our Supreme Court has explained, "if the court concludes the writing is unambiguous, it must declare the interpretation as a matter of law; if it reaches the opposite conclusion, interpretation of the ambiguous contract becomes a question of fact." *Sutton v. Purzycki*, 2022 VT 56, ¶ 38, 217 Vt. 326, 347 (quotation omitted).

The Court finds that the plain language of the Contract's transparency clause is unambiguous. The sole question is which items of work are covered by the clause's terms. The transparency clause places an obligation on VCC to retain "receipts" and a "labor journal" for "time and material work." Def. Ex. A, at 4. Notably, the Contract states "time and material

work," not simply "work" or "all work." *Id*. This specificity suggests there are multiple categories of work; otherwise, the language would not be needed. *See Dep't of Corr.*, 2008 VT 32, ¶ 12 (stating the goal in interpreting a contract is to give meaning to all parts). The language of the "Pricing and Payment" section of the Contract supports this construction. The section provides that any work performed outside of the scope of the contract "will be billed on a time and material basis at the below rates, or . . . at an agreed-upon *fixed price*" – mirroring the two types of pricing schemes for the Contract. Def. Ex. A, at 3 (emphasis added).

Further, of the five sections categorizing the contracted work (rot repair, demolition, rough carpentry, roof repair, and drywall and paint), only one subsection contains the words "time and material." As noted above, next to the title "Rot repair," it states, "Time and Material Rate in Addition to Proposed Fixed Rate ($119,507) Below." Def. Ex. A, at 1. Then, in the description of services for rot repair, the Contract states that the repair for "rotten wood in the lakeside wall and ceiling . . . will be tracked and billed at a time ($85 per hour) and material (20% markup) allowance." In addition, the section states the "surgical demolition and rot repair on the kitchen wall . . . will also [be] tracked and billed [at a] time and material" rate. *Id*. No section other than "Rot repair" contains any language referencing the time-and-materials rate.

Accordingly, reading the document as a whole, the Court concludes that the Contract contains two categories of pricing: (1) a fixed price of $119,507 for the majority of the work to be done and (2) a time and materials rate applying to the "Rot repair" section.

The Stewarts argue that such an interpretation violates 26 V.S.A. § 5509, part of the statute requiring registration of certain residential contractors with the Office of Professional Regulation. Section 5509(b) provides that a residential construction contract estimated to exceed $10,000 shall specify:

> (A) Price. One of the following provisions for the price of the contract:
> (i) a maximum price for all work and materials;
> (ii) a statement that billing and payment will be made on a time and materials basis, not to exceed a maximum price; or
> (iii) a statement that billing and payment will be made on a time and materials basis and that there is no maximum price.

26 V.S.A. § 5509(b)(2)(A). The Stewarts' argument is twofold: (1) none of these pricing schemes allows "a contract that specifies a fixed total price," *see* Pls. Mem. in Support of Mot. for Summ. J. at 3 (filed 04/13/2026), and (2) a residential construction contract may not contain more than one of the enumerated pricing provisions. The Court disagrees.

Regarding the Stewarts' first assertion, as is evident above, § 5509(b)(2)(A) describes three different pricing schemes: (1) a time and materials rate without a cap, (2) a time and materials rate with a cap, and (3) a maximum price. The Stewarts' proposed interpretation would make the maximum price scheme redundant – in other words, a time and materials rate with a maximum price that is essentially the same as the second scheme. The Court rejects such a construction that renders terms in a statute superfluous. *State v. Morrill*, 2025 VT 19, ¶ 12, 336 A.3d 430 (noting that courts should "avoid a construction that renders any portion of a statute

6

ineffective or superfluous" (quotation omitted)); *see also* 26 V.S.A. § 5509(c)(1) (specifying the down payment that may be required in two different situations, i.e., if "a contract specifies a maximum price for all work and materials *or* a statement that billing and payment will be made on a time and materials basis, not to exceed a maximum price" (emphasis added)). Therefore, the Court concludes the "maximum price for all work and materials" must be interpreted to allow for a fixed pricing scheme.

Second, contrary to the Stewarts' contention, no language in the statute limits the pricing scheme to "only one" of the listed choices. The intent of § 5509 is to set minimum requirements for certain residential construction contracts to protect homeowners, including to put them on notice of how the price of the contracted work will be calculated. Thus, while such a contract must specify "one of the following provisions for the price of the contract" under § 5509, there is nothing "inherently inconsistent and illogical" about including more than one type of pricing scheme. *See* Pls. Mem. in Support of Mot. for Summ. J. Indeed, there are various reasons why a contractor and an owner might agree to use a maximum price for all work and materials for one type of project (such as demolition or excavation), and a time and materials scheme, with or without a maximum price, for a different type of project (such as installation of HVAC or plumbing, electrical wiring, or painting). Here, given that the Contract includes at least one of the pricing schemes identified by the legislature, there is no violation of § 5509.[6]

## II. Breach of Contract.

To establish a breach of contract claim, the party alleging breach must show that (1) there was a valid formation of the contract, (2) there was performance under the contract, (3) the party breached their contractual obligation, and (4) the breach caused damages. *See generally* 17B C.J.S. Contracts § 830. If the facts are undisputed, the question of whether a party has breached the contract is a question of law. *Beldock v. VWSD, LLC*, 2023 VT 35, ¶ 27, 218 Vt. 144. Both parties have moved for summary judgment on their breach of contract claim, and the Court addresses each claim in turn.

### A. The Stewarts' Breach of Contract Claim

The Stewarts' sole claim for breach of contract concerns the Contract's transparency clause, alleging that VCC failed to comply. The parties do not dispute that they formed a valid contract on September 21, 2023. The Stewarts' claim turns on the third element: whether VCC breached an obligation it owed them. As explained above, the transparency clause requires VCC

---

[6] Plaintiffs also complain that the Contract does not include "estimated start and completion dates" and that VCC required a deposit before executing the written contract. 26 V.S.A. § 5509(b)(1), 2(B). Even if this were so, the Stewarts have articulated no prejudice caused by the deviations, which are unrelated to the transparency clause that is at the core of the dispute between the parties, nor is the conduct so serious that it would support finding the Contract void and unenforceable. *See, e.g.*, *Lang McLaughry Spera Real Est., LLC v. Hinsdale*, 2011 VT 29, ¶ 22, 190 Vt. 1 (identifying factors considered in determining "unenforceability . . . on public policy grounds").

to compile receipts and labor journals only for "time and material work," and the only time-and-material work under the Contract is the Rot Repair section.

VCC produced documentation at the Stewarts' request for the $35,558.62 it billed for rot repair. While VCC acknowledged that it could not locate timesheets covering seven hours of billed labor, it noted that it underbilled the Stewarts by $623.95 overall after offsetting underbilled materials. The Contract did not require VCC to document the fixed-price work as discussed above. The Stewarts received this documentation for the time and material work, affirming the "documentation support[ed] invoices totaling $35,558.62." *See* Pls. Answer to Def. Counterclaim and to Def. Affirmative Defenses ¶ 15.

As such, the documentation VCC supplied for the time and material work satisfies its obligations under the Contract. Accordingly, the Stewarts cannot establish a breach based on the transparency clause, and their claim fails as a matter of law.[7]

### B. VCC's Breach of Contract Counterclaim

VCC's counterclaim alleges that it performed its obligations under the Contract and that the Stewarts breached their obligations by refusing to pay the final invoice. Formation is again undisputed. VCC's claim therefore turns on the remaining three elements: its own performance, the Stewarts' breach, and resulting damages.

Contract law generally requires perfect tender. For construction contracts, however, substantial performance suffices to recover the contract price, less a fair allowance for correcting defects. *Vt. Structural Steel Corp. v. Brickman*, 126 Vt. 520, 523-24, 236 A.2d 658, 660-61 (1967). The contractor bears the initial burden of establishing substantial performance. Once the contractor shows that the homeowner "received a real and actual benefit from the work," the burden shifts to the homeowner to prove a substantial breach or, if only minor, to establish "what amount the contract price should be offset by the defects proved." *Id*. at 524, 236 A.2d at 661.

The undisputed facts establish substantial performance. VCC provided the Stewarts with "photographs showing the completed work," and the Stewarts state that by November 26, 2023, the "work was essentially completed." Pls. Mem. in Opp. to Def. Cross-Mot. for Summ. J. at 4 (filed 4/29/2026). The supporting exhibits show that VCC completed the rot repair, demolition, rough carpentry, and drywall and paint. The Stewarts report no ongoing roof leakage. The third and fourth change orders removed the decking and railing from the scope, so those items do not count against VCC's performance.

The only loose end in the record appears to be the PVC kickboard, raised only by the Stewarts in passing on reply. *See* Pls. Reply in Support of Mot. for Summ. J. at 5 (filed

---

[7] The Stewarts raise a host of other claims and issues in their filings, but as the Court clarified at the motion to dismiss stage, the only cause of action Plaintiffs assert in this case is one for breach of contract based on VCC's failure to comply with the transparency clause. To bring other causes of action, the Stewarts would need permission to amend their Complaint, which has been neither sought nor granted.

05/17/2026); Def. Ex. C (Depo. of Shyla Stewart), at 7 (stating that VCC "did not actually reinstall PVC kickboard and stain and paint to match. That is an unfinished component of this project"). However, the Stewarts do not argue this point as grounds to avoid their payment obligations, nor do they establish the value of the unfinished item. Moreover, the PVC kickboard represents a single line item in a contract whose main purpose was to repair weather-related rot – a purpose that has been fulfilled. Thus, the kickboard is merely "some minor particular[]" and there is no basis to conclude that VCC did not substantially perform the contract or that any offset is due to the Stewarts. *See Vt. Structural Steel Corp.*, 126 Vt. at 523, 236 A.2d at 660.

The third element, breach by the Stewarts, is clearly established from the undisputed facts. The Pricing and Payment section of the Contract requires that "[a]ll invoices for work completed or stored material will be paid within 15 days of receipt, or as otherwise agreed." Def. Ex. A, at 3. VCC sent the final invoice for $31,333.59 on May 10, 2024, and the Stewarts admit they did not pay it. Def. SUMF ¶ 21. Failure to pay a properly issued invoice for substantially performed work within the time specified is a breach of the payment obligation imposed by the Contract.

The fourth element, damages caused by the breach, is likewise established. The natural and direct consequence of nonpayment is the loss of the contract price owed. The Stewarts have deprived VCC of $31,333.59 it earned by performing the Contract, and the Pricing and Payment section further provides that "[u]npaid accounts will be billed 1.5% per month on outstanding balances." Def. Ex. A, at 3. Accordingly, there is no dispute that VCC's damages are the unpaid balance of $31,333.59, plus contractual late charges at 1.5% per month from the date the invoice became due. All four elements being satisfied, VCC is entitled to summary judgment on its counterclaim.

III.     Prompt Payment Act Claim.

VCC has also asserted a claim under the Vermont Prompt Pay Act ("VPPA"), 9 V.S.A. §§ 4001-4009. The statute requires an owner to pay a contractor "strictly in accordance with the terms of the construction contract" unless the owner withholds payment "in good faith for reasonable cause," in which event the amount withheld "must bear a reasonable relation to the value of any claim held in good faith by the owner." *Id*. § 4002(c). When an owner's withholding falls outside that safe harbor, the contractor may recover interest at the statutory rate on amounts wrongfully withheld, together with a penalty of one percent per month on the wrongfully withheld amount. *Id*. § 4007(a), (b). A party that "substantially prevails" in an action brought to enforce the Act is also entitled to reasonable attorney's fees and expenses. *Id*. § 4007(c).

The parties do not dispute that VCC is a "contractor" and the Stewarts are "owners" under the VPPA, so the statute applies. The threshold question is whether the Stewarts withheld payment in good faith for reasonable cause, and, if so, whether the amount withheld bore a reasonable relation to the value of that claim. *See* 9 V.S.A. § 4002(c). The Stewarts withheld the final invoice on the premise that all work was billable on a time-and-materials basis, subject to a cap, and that the contract required VCC to substantiate every charge with the labor and material

logs under the transparency clause. As the Court has found above, that premise cannot be squared with the Contract's plain language: the Rot Repair section expressly identifies the time-and-materials rate as "in addition to" the proposed fixed rate, the Pricing and Payment section distinguishes time-and-materials work from fixed-price work, and the transparency clause is by its terms limited to "time and material work." No reasonable reading of the Contract supports treating the entire project as time-and-materials work or extending the transparency clause to other work performed. Thus, the withholding of the final invoice on this theory did not rest on a good-faith dispute over a contractual term susceptible of more than one reading, but rather on a position the Contract forecloses. Therefore, the Stewarts' actions fall outside § 4002(c)'s safe harbor, and VCC is entitled to the remedies the statute provides. *See Naylor v. Cusson*, 2007 VT 108, ¶ 14, 182 Vt. 627 (mem.) (safe harbor defense is unavailable where court does not make a finding of good faith).

The Court next determines the appropriate measure of relief. Section 4007(a) directs that "interest at the rate of one percent per month" accrues on amounts wrongfully withheld; the contract here, however, provides for late-payment interest at 1.5% per month, which exceeds the statutory rate. The VPPA does not displace a more favorable contractual interest provision to the contractor. *See id*. § 4007(a). VCC is therefore entitled to interest at the contractual rate of 1.5% per month on the unpaid balance from the date the final invoice became due. The Court further awards the statutory penalty of one percent per month under § 4007(b), which is in addition to and serves a different purpose from the contractual interest charge: the contractual rate compensates VCC for the time value of money the Stewarts owe, while the statutory penalty is imposed for the wrongful withholding itself. Post-judgment interest will accrue at the statutory rate under 12 V.S.A. § 2903(d).

Finally, the Court addresses whether VCC "substantially prevailed," justifying an award of attorney's fees. Whether a party has "substantially prevailed" under the VPPA is committed to the trial court's discretion. *See Birchwood Land Co. v. Ormond Bushey & Sons, Inc.*, 2013 VT 60, ¶ 31, 194 Vt. 478. Here, VCC has obtained summary judgment on both the Stewarts' affirmative claim and their own counterclaim, resolving the litigation in its favor. Thus, there can be no question that VCC has substantially prevailed within the meaning of § 4007(c), and therefore VCC is entitled to recover its reasonable attorney's fees and costs.

Order

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (Mot. #6) is DENIED. Defendant's Cross-Motion for Summary Judgment (Mot. #7) and Motion for Leave to File Surreply (Mot. #9) are GRANTED.

A separate judgment order shall issue entering judgment in favor of VCC and against the Stewarts in the principal amount of $31,333.59, representing the unpaid balance reflected in VCC's final invoice, together with prejudgment interest at the contractual rate of 1.5% per month and the statutory penalty of one percent per month on the wrongfully withheld amount under 9 V.S.A. § 4007(b). *See* V.R.C.P. 58(a).

Within 7 days of the date of this Order, VCC shall submit a proposed judgment order consistent with the Court's decision that includes the method for calculating the prejudgment interest and statutory penalty under the VPPA awarded above. *See* V.R.C.P. 58(d).

Within 14 days of the date of this Order, VCC shall file any motion for reasonable attorney's fees and costs under 9 V.S.A. § 4007(c), supported by appropriate documentation. *See* V.R.C.P. 54(d)(2). The Stewarts shall have 14 days from service to respond. *See* V.R.C.P. 7(b)(4).

Electronically signed on July 13, 2026 at 8:45 AM pursuant to V.R.E.F. 9(d).

_____
Megan J. Shafritz
Superior Court Judge

11